A04A0280. ENDSLEY v. ROBINS FEDERAL CREDIT UNION.
(600 SE2d 441)

ANDREWS, Presiding Judge.

Atari A. Endsley appeals from the trial court's judgment entered on his claims for wrongful repossession of an automobile financed by Robins Federal Credit Union (Robins) and damage to his credit as a result.

The trial court granted summary judgment to Robins on the issue of the legality of the repossession and the damage to credit claim. The remaining issue of the commercial reasonableness of the sale of the collateral was tried in a bench trial, resulting in the trial court's finding that the sale was conducted in a commercially reasonable manner. Endsley also challenges the finding of commercial reasonableness.

To prevail on a motion for summary judgment, the moving party must demonstrate that there is no genuine issue of material fact, and that the undisputed facts, viewed in a light most favorable to the party opposing the motion, warrant judgment as a matter of law. OCGA § 9-11-56 (c); *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). "Our review of a grant of summary judgment is de novo, and we view the evidence and all reasonable inferences drawn from it in the light most favorable to the nonmovant." (Footnote omitted.) *Smith v. Bulloch County Bd. of Commrs.*, 261 Ga. App. 667 (583 SE2d 475) (2003).

So viewed, the facts here were that Endsley financed a 1996 Acura Integra for $20,000 through Robins. On November 3, 1996, Endsley struck a deer while driving in Texas and the car was substantially damaged. Full Custom Paint and Body (Full Custom) made $6,000 worth of repairs to the car and was paid $4,000 of this amount by Endsley's insurance carrier, State and County. After an adjuster for the insurer inspected the car, a problem was found and State and County refused to pay the remainder of the bill. Endsley then retained a Texas attorney to sue State and County for the refusal to pay. Because the bill had not been paid in full, Full Custom refused to release the car to Endsley.

On January 23, 1997, the car was stolen from Full Custom and vandalized. The car was left with Unlimited Paint and Body Shop and Endsley was notified. He went to the body shop where he found the car with the door panels off, no seats in the car, and damage to the

engine. At this point, an adjuster for State and County estimated needed repairs at $2,000. Endsley did not make any arrangements with Unlimited to retrieve the car.

Later, Unlimited's owner contacted Endsley again and told him that storage fees were due on the car and the people who had left it with him were supposed to pay them. Endsley told him that his insurance company was responsible and he did not have the money to pay the fees. Robins was eventually paid $2,000 by State and County for the additional damage to the car. These funds were applied to Endsley's indebtedness. In February 1997, Robins was served with a copy of Unlimited's "Questionnaire Affidavit for Foreclosure Under Statutory Storage — Mechanic's Lien" asserting a storage lien on the car in the amount of $700. Authority stated for Unlimited's possession of the car was "owner do not want the car." Thrasher, a Robins employee, then contacted Endsley and advised him that Unlimited was attempting to put a mechanic's lien on the car. Endsley advised her he did not have the funds to pay the fees and was involved in a dispute with his insurance company. She advised him if he did not pay the fees, Robins would take possession of the car.

On March 12, 1997, Robins paid Unlimited the storage fees and asked a Texas credit union to take possession of the car until it could be determined what Endsley planned to do. Once the vehicle was in this credit union's possession, Endsley was again notified and asked to pay the storage fees. He told Robins that he did not have the funds to pay the fees and the car was not driveable. Endsley made no more payments on the car after March.

On June 30, 1997, the car was sold by the Texas credit union for Robins for $627.50, the sole bid received from a body shop.

The Advance Voucher and Security Agreement signed by Endsley provided, in pertinent part, that

> You promise you will allow no security interest or lien to attach to the property either by your actions or by operation of law. . . . You also promise to do whatever else the credit union thinks is necessary to protect its security interest in the property. . . . You will be in default if you break any promise you make under this agreement. . . . When you are in default, the credit union can, without advance notice to you, . . . take possession of the property. You agree the credit union has the right to take possession of the property without going to court and without giving you advance notice. . . . After the credit union has possession of the property, it can sell it and apply the money received to any amounts you owe the credit union. . . . The expenses of the credit union for taking possession of and selling the property will be deducted from

the money received from the sale. Those costs may include the cost of storing the property. . . .

1. Endsley argues that he was not in default under this agreement and summary judgment on this basis to Robins was error.

Although Robins agrees that Endsley's payments were current through March, that is not the default relied upon. As set out above, Unlimited placed a lien upon the car for storage. In Texas, a garageman is entitled to a lien by operation of law for caring for an automobile left in his care. Tex. Prop. Code § 70.003. This lien takes precedence over a perfected security lien. *Gulf Coast State Bank v. Nelms*, 525 SW2d 866, 869 (Tex. 1975).

The fact that Endsley was in a dispute with his insurance company does not alleviate his obligation to Robins to assist in protecting the car by paying the storage fees. His inability or refusal to pay these fees resulted in the lien by operation of law and this was a default under the agreement.

As provided by OCGA § 11-9-601 (a), "[a]fter default, a secured party has the rights provided in this part and, except as otherwise provided in Code Section 11-9-602, those provided by agreement of the parties." OCGA § 11-9-609 (a) provides that the secured party may take possession of the collateral following default and OCGA § 11-9-610 allows the secured party to sell the collateral.

The trial court did not err in concluding Robins had the right to take possession of the car and sell it.

2. Endsley also contends that the trial court erred in granting Robins summary judgment on his damage to credit claim.

"Because we find that the repossession was not wrongful, the claim of an adverse effect on [Endsley's] credit was not actionable." *Atlantic Coast Fed. Credit Union v. Delk*, 241 Ga. App. 589, 590 (2) (526 SE2d 425) (1999).

3. Finally, Endsley contends that the sale of the Acura was not done in a commercially reasonable manner as required by OCGA § 11-9-610 (b).[1]

The trial court concluded that the sale was done in a commercially reasonable manner and that, even had it not been, no damage to Endsley had been shown.

---

[1] This issue is generally addressed in the context of a deficiency suit by the creditor seeking to recover the balance due on the collateral following the sale of it. *Atlantic Coast Fed. Credit Union*, supra at 590-591 (4); see *Braswell v. American Nat. Bank*, 117 Ga. App. 699, 701 (161 SE2d 420) (1968). There was no counterclaim here for the deficiency and Robins does not intend to pursue the deficiency. See *Wagner v. Ford Motor Credit Co.*, 155 Ga. App. 729, 730 (272 SE2d 500) (1980).

Here, the Acura had been vandalized, including the stripping of its interior. As described by Endsley, "[i]t was stripped, engine parts missing, interior missing, electronics missing." The car was not driveable.

The Texas credit union attempted to sell the car to its membership for eight weeks without results. Pruett, who was handling the car for the credit union, then contacted more than three body shops seeking a bid on the car. Only one shop responded, and that bid for $627.50 was accepted. There was sufficient evidence shown to support the trial court's conclusion that the sale was commercially reasonable under the circumstances. See *Southeast Recovery Svcs. v. Northen*, 255 Ga. App. 516, 519 (1) (565 SE2d 861) (2002); *Granite Equip. Leasing Corp. v. Marine Dev. Corp.*, 139 Ga. App. 778 (1) (230 SE2d 43) (1976).

*Judgment affirmed. Miller and Ellington, JJ., concur.*

DECIDED MAY 20, 2004.

*Edwards & Youmas, Lonzy F. Edwards*, for appellant.
*Kirby R. Moore*, for appellee.